## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

WAYNE HOSPITAL COMPANY d/b/a **:**
WAYNE HEALTHCARE,
                                             **:**    Case No. 3:13cv00069
        Plaintiff,
                                             **:**    District Judge Thomas M. Rose
  vs.                                                 Chief Magistrate Judge Sharon L. Ovington
                                             **:**
CHRISTOPHER T. PALMER d/b/a
DARKE COUNTY CREDIT BUREAU, **:**

        Defendant.                           **:**

## REPORT AND RECOMMENDATIONS[1]

### I.    BACKGROUND

Plaintiff Wayne Hospital Company, d/b/a Wayne Healthcare, alleges that in October 2006 it entered into a Collection Services Agreement with Defendant Christopher T. Palmer, d/b/a Darke County Credit Bureau, whereby Palmer agreed to assist, as an independent contractor, with the collection of certain "uncollected" consumer debts owed to Wayne Hospital by its patient-debtors for personal healthcare services it provided.  (Doc. #1, *PageID##* 2-3).  Wayne Hospital alleges that it would refer uncollected accounts to Palmer, he would attempt to collect the funds, and, when successful, would receive anywhere from 20% to 35% of the funds collected (depending upon the nature of the placement).  Wayne Hospital alleges its relationship with Palmer

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

was not exclusive in nature, he was not the only collection agent it utilized, and it had discretion "when and whether to use his services." (Doc. #1, *PageID#* 3).

In August 2009, Wayne Hospital decided to end its business relationship with Palmer, effective as of September 10, 2009. Wayne Hospital alleges it sent Palmer a notice – pursuant to the terms of its contractual agreement – informing Palmer of this decision and instructing him to cease collection efforts as of September 10, 2009. Despite such notice, Palmer allegedly continued to collect patient debts owed to the hospital.

As a result, Wayne Hospital contends that Palmer violated § 1692e(5) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, prohibiting a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including threatening "to take any action that cannot legally be taken or that is not intended to be taken." (Doc. #1, *PageID#* 7). Wayne Hospital argues, in part, that "[t]he debt collection actions filed by Palmer against patient-debtors of the Hospital in defiance of the cease-and-desist instruction, using the fictitious name [Darke County Credit Bureau] as the plaintiff and where he had not received separate written assignments from the Hospital, constitute the unauthorized practice of law and violate the FDCPA, 15 U.S.C. § 1692e(5), because no such actions could legally be taken." (Doc. #1, *PageID#* 8).

Wayne Hospital also argues that Palmer violated § 1692e(2)(A) of the FDCPA by "falsely represent[ing] the 'character, amount, or legal status' of the debts by commencing suits against the patient debtors and/or by continuing debt collection efforts

2

after termination of the Agreement because he had no ownership over the underlying debts, which remained the property of the Hospital."  (Doc. #1, *PageID#* 8).  Wayne Hospital believes Palmer has continued such unauthorized efforts as recently as August 2012.  (Doc. #1, *PageID#* 9).

Wayne Hospital contends that "[u]nder the broad language of [the FDCPA], any aggrieved party harmed by the failure of a debt collector to comply with any provision of the FDCPA may file suit to recover actual damages, statutory damages, and reasonable attorneys' fees, and costs."  (Doc. #1, *PageID#* 6, citing *Wright v. Finance Serv.*, 22 F.3d 647, 649-50 (6th Cir. 1994)).  Wayne Hospital alleges Palmer has "caused harm to [its] reputation by collection monies due and owing [it] from its patient-debtors without authority to do so . . . and caused it financial harm by retaining control over monies received through those efforts."  (Doc. #1, *PageID#* 6).

Palmer denies any wrongdoing.  He also seeks partial judgment on the pleadings, requesting the Court dismiss Wayne Hospital's claims under the FDCPA, with prejudice, and thereafter decline to exercise supplemental jurisdiction over remaining state-law claims for breach of contract and civil conversion.  Palmer argues that Wayne Hospital lacks standing to bring any FDCPA claims against him because Wayne Hospital is not a consumer, but rather a corporation registered to do business in the State of Ohio. According to Palmer, "it is clear that the FDCPA was not enacted to protect it from a debt collector that it hired to collect its debts and who allegedly breached a contract."  (Doc. #16, *PageID#* 155-56).

3

This case is presently before the Court upon Defendant's Motion for Judgment on the Pleadings (Doc. #16), Plaintiff's Memorandum in Opposition (Doc. #17), Defendant's Reply (Doc. #18), and the record as a whole.

## II.    MOTION FOR JUDGMENT ON THE PLEADINGS

Palmer contends he is entitled to judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Doc. #16, *PageID#* 149-57).

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  "[A]ll well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.  A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (also discussing, in part, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

When reviewing a Complaint under both Rule 12(c) and Rule 12(b)(6), the Court accepts as true the Complaint's factual allegations and construes all reasonable inferences in the plaintiffs' favor.  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  To survive a Rule 12(b)(6) Motion, the Complaint "must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative

4

level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 1965, 167 L.Ed.2d 929 (2007)).

To state a plausible, non-speculative claim the Complaint need only set forth a short and plain statement of the claim showing that the plaintiff is entitled to relief.  *See* Fed. R. Civ. P. 8(a).  This does not require detailed factual allegations, yet it does require "more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677, 129 S.Ct. 1937, 1949 (2009)(*Twombly* citations omitted); *see Eidson v. State of Tn. Dept. of Children's Svs.*, 510 F.3d 631, 634 (6th Cir. 2007)("[A] complaint must contain either direct or inferential allegations respecting all material elements to sustain recovery under some viable legal theory…Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

## III.    ANALYSIS

Wayne Hospital acknowledges "this case presents an atypical set of facts giving rise to the claim that Palmer violated the Fair Debt Collection Practices Act," yet contends that "just because the circumstances are unique does not establish that no cause of action lies."  (Doc. #17, *PageID#* 158).  Wayne Hospital alleges that "[b]ecause the FDCPA is intended to be self-enforcing, a creditor, like the Hospital, aggrieved when its

rogue former debt collector unilaterally ignores termination of their contractual relationship and actively collects against debts owed to the creditor, satisfies the definition of 'person' necessary to assert a cause of action for violation of the statute." (Doc. #17, *PageID#* 161).  Wayne Hospital also argues that "the plain and ordinary language" of the FDCPA does not exclude it from asserting such a claim and "[c]orporate entities may be considered a 'person' except where the definition has been limited to 'natural persons.'" (Doc. #17, *PageID#* 163).

Who may enforce provisions of the FDCPA is governed by the enforcement provision of the Act, § 1692k(a), which provides that "any debt collector who fails to comply with *any* provision of this subchapter with respect to *any person* is liable to such person . . ." (emphasis added).  Wayne Hospital correctly notes that the term "any person," has not been expressly defined under the FDCPA.  Wayne Hospital also correctly notes that the United States Court of Appeals for the Sixth Circuit has previously held that § 1692k(a), is "couched in the broadest possible language," and that "absent a limitation in the substantive provisions, the ordinary and common understanding is that any aggrieved party may bring an action under § 1692e." *Wright v. Finance Serv.*, 22 F.3d 647, 649 (6th Cir. 1994) (citations omitted); *see also Montgomery v. Huntington Bank*, 346 F.3d 693, 697 (6th Cir. 2003).  Wayne Hospital, however, is misguided in its belief that it – as a creditor – also has standing to sue a debt collector for alleged violations of the FDCPA in connection with the collection of its debts.

In *Wright*, the Sixth Circuit held that the phrase "with respect to any person," as

6

included in § 1692k(a), "at a minimum, includes those persons, such as [the executrix of an estate], who 'stand in the shoes' of the debtor or have the same authority as the debtor to open and read the letters of the debtor." *Wright*, 22 F.3d at 650. The Sixth Circuit's use of the term "at a minimum" in the above quotation from *Wright*, appears to therefore leave open *the possibility* that other natural persons – or possibly even organizations – may be considered an "aggrieved party" and thus, have standing to bring an action under § 1692e. Whether an organization, in fact, has standing to bring a claim under § 1692e, however, need not be decided at this time because the Court finds that a creditor – whether a natural person or an organization – does not have standing to sue a debt collector for any alleged violation of the FDCPA in connection with the collection of its debts.

In deciding whether Wayne Hospital, a creditor, has standing in this case, the Court first turns to the statutory language of the FDCPA. *Schroyer v. Frankel*, 197 F.3d 1170, 1174 (6th Cir. 1999) ("When interpreting the FDCPA, we begin with the language of the statute itself."). The FDCPA defines the term "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). The FDCPA defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." 15 U.S.C. § 1692a(4). The FDCPA does not, however, define the term "any person," despite its continued use throughout the Act.

Reviewing the statutory language of the FDCPA reveals that Congress did *not*, however, intend the term "any person" to include a "creditor," regardless of whether such creditor is a natural person or an organization. To hold otherwise would obfuscate significant portions of the FDCPA. For example, § 1692b of the FDCPA relates to the acquisition of "location information" by a debt collector, and again uses the term "any person." The term "location information" is defined in the FDCPA as "a consumer's place of abode and his telephone number at such place, or his place of employment." 15 U.S.C. § 1692a(7). This section requires debt collectors to follow certain guidelines when "communicating with *any person* other than the consumer for the purpose of acquiring location information about the consumer . . . ." 15 U.S.C. § 1692b. Had Congress intended a "creditor" to be included in the term "any person" – as Wayne Hospital requests this Court to conclude – then this section of the FDCPA would be rendered nonsensical. For example, including "creditor" in the term "any person" would prohibit a debt collector from stating to a creditor that a consumer owes any debt. *See* 15 U.S.C. § 1692b(2). It would also prohibit a debt collector, in part, from: communicating with a creditor "more than once unless requested to do so . . . ," § 1692b(3); communicating with a creditor by post card, § 1692b(4); and communicating with a creditor by using "any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt," § 1692b(5). Including "creditor" in the term "any person," would also require a debt

8

collector – whenever speaking with a creditor – to "identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer." 15 U.S.C. § 1692(b)(1). Even the most cynical critic of Congress should agree that Congress would not have intended such absurd results, yet construing the term "any person" to include "a creditor" would cause these very oddities.

While the Sixth Circuit has held that the enforcement provision of the FDCPA, § 1692k(a), is "couched in the broadest possible language," it acknowledged that such interpretation is not without limits. The Sixth Circuit held that any "aggrieved party" may bring an action under § 1692e, but only "absent a limitation in the substantive provisions [of the FDCPA]. . ." *Wright*, 22 F.3d at 649. As the statutory language of the FDCPA indicates that Congress did not intend for the term "any person" to include "a creditor" in any other provision of the Act, the Court finds Congress likewise did not intend for the term "any person" to include "a creditor" in the FDCPA's enforcement provision, § 1692k(a). *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, L.P.A.*, 559 U.S. 573, 587-88, 130 S. Ct. 1605, 1615, 176 L. Ed. 2d 519 (2010) ((citing *Dada v. Mukasey*, 554 U.S. 1, 16, 128 S. Ct. 2307, 171 L. Ed. 2d 178 (2008) ("In reading a statute we must not look merely to a particular clause, but consider in connection with it the whole statute.")). As such, the Court finds a creditor – whether a natural person or organization – does not have standing to sue a debt collector for violations of the FDCPA in connection with the collection of its debts. Thus, Wayne Hospital, as a creditor, lacks

9

standing to sue its debt collector, Palmer, for alleged violations of the FDCPA in connection with the collection of its debts.

This conclusion is also in accord with the purpose of the FDCPA and the legislative history of the Act.  The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  The Senate outlined the need for passage of the FDCPA, noting that "debt collection abuse by third party debt collectors is a widespread and serious national problem."  S. Rep. No. 382, 95th Congress, 1st Sess. 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696.

Although Wayne Hospital contends that permitting a creditor, such as itself, to be able to pursue claims against a debt collector for alleged violations of the FDCPA would help to advance the purpose of the FDCPA, the Court does not find this argument persuasive.  It is certainly foreseeable that permitting a creditor to bring FDCPA claims would inevitably lead to the litigation of more FDCPA cases, yet more cases being filed under the FDCPA does not necessarily translate into abusive debt collection practices being curbed or consumers receiving additional protection from such harm.  For example, it is conceivable that a creditor would only raise claims under the FDCPA against a debt collector it contracted with when it is, for whatever reason, dissatisfied with the debt collector's collection *results*, not abusive collection *practices*.  To the extent a creditor is

reaping the benefits of a debt collector's abusive debt collection practices, it is likely such a creditor would have a large incentive to take no legal action until, or unless, its interests as a creditor are somehow harmed financially.  The consumer, on the other hand, would be harmed regardless.  More simply stated, creditors will only file cases when it is necessary to protect their interests, not the interests of a debtor.

One may argue that a creditor also has an interest in maintaining a good business reputation and that debt collectors who violate the FDCPA while collecting debts hinder this interest.  This may be true, but the purpose of the FDCPA is not to protect a creditor's business reputation or otherwise insulate it from financial loss caused by an unscrupulous debt collector's actions.  Moreover, it cannot be overlooked that creditors *voluntarily* contract with debt collectors.  If a creditor is so genuinely concerned about protecting its reputation or its debtors from abusive debt collection practices, it should perform its due diligence *prior* to entering into a business relationship with a debt collector and closely monitor the debt collector's activities thereafter.  For those creditors sincerely interested in protecting their debtors from abusive debt collection practices, such actions would likely do much more than the filing of a lawsuit after the fact.

Not only does it seem that permitting a creditor to pursue claims under the FDCPA would do little to protect a consumer from abusive debt collection practices, but it appears it may have the opposite effect and actually *increase* the frequency of such harm.  For example, if creditors were permitted to pursue claims under the FDCPA, it is conceivable they would have no incentive to screen out, or otherwise avoid doing business with, debt

11

collectors who systematically fail to comply with the FDCPA.  Rather, a creditor could enjoy the financial gains achieved by contracting with an unscrupulous debt collector until such time as it becomes more financially beneficial to file, or threaten to file, an action against such debt collector under the FDCPA.  In such a scenario, the creditor would then be able to gain financially from FDCPA violations committed by the very debt collector it provided debtors to harm.  It is hardly imaginable that Congress intended the FDCPA to be such a tool for creditors.

A creditor certainly will always face the risk that even the most reputable of debt collectors may violate the FDCPA in such a manner as to harm its debtors and tarnish its reputation.  And in such instances where this risk, no matter how minute, is nonetheless too great for a creditor to assume, then perhaps such a creditor should not contract with any debt collector at all but rather attempt to collect its own debts.  To the extent a creditor determines it to be more economically advantageous to use the services of a debt collector than seek collection from debtors on its own, Congress did not intend for such a creditor to later use the FDCPA as a type of refuge from financial harm caused by the very risks it previously determined were outweighed by the prospect of greater financial returns.

For the reasons stated above, Wayne Hospital lacks standing to sue Palmer for alleged violations of the FDCPA committed in connection with the collection of its debts. Palmer's Motion for Judgment on the Pleadings (Doc. #16) is therefore well taken.

Upon the dismissal of Wayne Hospital's federal claims, the Court should decline

to exercise supplemental jurisdiction over Wayne Hospital's remaining state-law claims

and dismiss them without prejudice to renewal in state court.  *See* 28 U.S.C. § 1367(c)(3);

*see also Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) ("When all

federal claims are dismissed before trial, the balance of considerations usually will point

to dismissing the state law claims, or remanding them to state court if the action was

removed." (citation omitted)).

## IT IS THEREFORE RECOMMENDED THAT:

1.  Defendant Christopher T. Palmer's Motion for Judgment on the Pleadings (Doc. #16) be GRANTED;

2.  Plaintiff Wayne Hospital Company's claims against Defendant Palmer under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, be DISMISSED WITH PREJUDICE;

3.  Plaintiff Wayne Hospital's remaining state-law claims against Defendant Palmer be DISMISSED without prejudice to renewal in state court; and,

4.  The case be terminated on the docket of this Court.


October 21, 2013

                                    s/Sharon L. Ovington
                                 Sharon L. Ovington
                              Chief United States Magistrate Judge

13

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See, United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).